*plaintiff +*
Copy mailed to attorneys for parties by the Court pursuant to Rule 77 (d) Federal Rules of Civil Procedures. 7/7/05



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS V. RODEN,

    Plaintiff,

v.                                     Case No. 02-C-922

KRONE NIEMEYER COMPANY
n/k/a KRONE NA INC.,

    Defendant.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

### I. BACKGROUND

In this patent infringement action the plaintiff, Thomas V. Roden ("Roden"), alleges that the defendant, Krone Niemeyer Company, ("Krone") is infringing Roden's U.S. Patent No. 4,747,255 ("the Patent" or "Roden's patent") by manufacturing several Krone products. Krone denies that its products infringe upon the Patent. After briefing by the parties and pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), on December 2, 2004, this court issued its Decision and Order on Claim Construction ("Claim Construction") in which it construed the claims of Roden's patent. Thereafter, on February 7, 2005, Krone filed a motion for summary judgment. On March 3, 2005, this court granted Roden's then attorney's motion to withdraw, and also extended the deadline for Roden to respond to Krone's summary judgment motion. As a result, Roden is now proceeding pro se. The parties subsequently completed their briefing on Krone's motion for summary judgment.

Along with its motion for summary judgment and pursuant to Civil Local Rule 56.2, Krone submitted a separate document entitled "Defendant Krone's Proposed Findings of Fact . . ." ("DPFOF") as well as evidentiary support for such proposed findings. Roden did not submit separate proposed findings of fact along with his response, nor did he respond to Krone's proposed findings of fact by referring to the specific contested findings by paragraph number, as required by Civil Local Rule 56.2(b)(1). Roden did, however, include along with his response evidentiary materials in support of his arguments, and referred to such materials throughout his response. Although he did not comply precisely with the local rules, the court will consider the materials submitted by Roden because he is proceeding pro se. Nevertheless, unless Roden has responded in his response to factual assertions made in Krone's proposed findings of fact, the court will conclude that there is no material issue of fact regarding such proposed findings. Civil Local Rule 56.2(e) ("In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.").

Other than the ultimate question of whether or not Krone's products infringe Roden's patent, the facts in this case are largely uncontested. The following is a brief recitation of uncontested facts pertinent to this motion.

Roden is the sole owner of United Sates Patent No. 4,747,255, which was issued to him on May 31, 1988. (DPFOF ¶¶ 9, 13.) The patent is entitled "cutter-bar support," and in general terms, describes and claims an agricultural mower apparatus used to mow hay or other forage crops.

The patent makes seven claims, each of which (either directly or by incorporating one of the other claims) claims, "In an agricultural mower apparatus, the combination comprising: a main frame having support wheels; a cutter assembly including a cutter frame, guard means mounted on said

2

AO 72A
(Rev.8/82)

Case 2:02-cv-00922-WEC   Filed 07/06/05   Page 2 of 13   Document 74

cutter frame, and reciprocating cutter bar means received in said guard means; a parallel linkage suspension means for suspending said cutter assembly . . . ."[1] (Patent at col. 8, ls. 32-38.)

Roden alleges that several Krone products infringe upon his patent. However, all of Krone's mowers which are at issue utilize rotary disc type cutters. None of the Krone mowers use a sickle bar cutter which cuts in a scissors like action. (DPFOF at ¶¶ 26-30.)

## II. LEGAL STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is improper 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in its favor." *Id.*

Determining infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Bai*, 160 F.3d at 1353. "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996). "Thus, a literal infringement issue is properly decided upon summary judgment when no genuine issue of

---

[1] This excerpt is from Claim 1 of the patent. Claim 2 contains language almost identical to the quoted language but with slightly different wording. *See infra* pp. 6-7. All of the other claims incorporate Claim 2 either directly or indirectly.

3

material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai*, 160 F.3d at 1353.

"An accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998). "What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case . . . consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform." *Warner-Jenkinson Co., Inc. v. Hilton Davis Co.*, 520 U.S. 17, 24-25 (1997) (quoting *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609 (1950)).

"Under the doctrine of equivalents, infringement may be found . . . if an accused device performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (citing *Graver Tank*, 339 U.S. at 608). However, the so-called "function-way-result" test is not "the" test for equivalency. *Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc.*, 62 F.3d 1512, 1518 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17, 39-40 (1997). Rather, "the application of the doctrine of equivalents rests on the substantiality of the differences between the claimed and accused products or processes . . . ." *Id.* Whether or not there is infringement under the doctrine of equivalents is a question of fact for the jury. *Id.* at 1521.

The doctrine of equivalents is subject to certain legal defenses. One such defense is prosecution history estoppel. "The touchstone of prosecution history estoppel is that a patentee is

AO 72A
(Rev.8/82)

Case 2:02-cv-00922-WEC    Filed 07/06/05    Page 4 of 13    Document 74

unable to reclaim through the doctrine of equivalents what was surrendered or disclaimed in order to obtain the patent." *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1322 (Fed. Cir. 1999). Prosecution history estoppel is applicable when an applicant amends patent claims during prosecution, but only if the amendment is for a limited set of reasons. *Warner-Jenkinson*, 520 U.S. at 32. The key to determining whether or not estoppel will apply is not what particular requirement of the Patent Act the amendment is made to satisfy, but whether or not the amendment is made to secure the patent, and the amendment narrows the patent's scope. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736-37 (2002).

Succinctly stated, "[p]rosecution history estoppel applies to matter surrendered as a result of amendments to overcome patentability rejections." *Loral Fairchild*, 181 F.3d at 1322. Commonly, prosecution history estoppel is applied when an applicant amends patent claims in response to the Patent Office's determination that the claims do not describe a patentable invention, either because what is described is already encompassed within prior art, or is obvious. *Warner-Jenkinson*, 520 U.S. at 30-31. Other than amendments, prosecution history estoppel may also be applied as a result of argument made to secure allowance of a claim. *Loral Fairchild*, 181 F.3d at 1322.

Another legal defense to the doctrine of equivalents is the disclosure-dedication rule. "[W]hen a patent drafter discloses but declines to claim subject matter . . . this action dedicates that unclaimed subject matter to the public." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002). "The claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed." *Id.* (quoting *Miller v. Bridgeport Brass Co.*, 104 U.S. 350, 361 (1881)). Another early Supreme Court case put it this way:

5

> Of course, what is not claimed is public property. The presumption is, and such is generally the fact, that what is not claimed was not invented by the patentee, but was known and used before he made his invention. But, whether so or not, his own act has made it public property if it was not so before. The patent itself, as soon as it is issued, is the evidence of this. The public has the undoubted right to use, and it is to be presumed does use, what is not specifically claimed in the patent.

*Id.* (quoting *Mahn v. Harwood*, 112 U.S. 354, 361 (1884)).

As to the applicability of the rule, "the disclosure-dedication rule applies to cases in which technology is both in existence and recognizably described in the written description of the patent, yet left unclaimed." *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1333 (Fed. Cir. 2004). In order for a disclosure within a patent to trigger the disclosure-dedication rule, the following standard must be met:

> We thus hold that if one of ordinary skill in the art can understand the unclaimed disclosed teaching upon reading the written description, the alternative matter disclosed has been dedicated to the public . . . . The disclosure must be of such specificity that one of ordinary skill in the art could identify the subject matter that had been disclosed and not claimed.

*Id.* at 1334 (quoting *PSC Computer Prods., Inc. v. Foxconn In'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004)).

Prosecution history estoppel and the disclosure-dedication rule, as limits on infringement under the doctrine of equivalents, are questions of law. *Toro*, 383 F.3d at 1331.

### III. DISCUSSION

In its Claim Construction, this court construed the term "Reciprocating Cutter Bar" to mean, "a sickle bar cutter which cuts in a scissors-like action." (Claim Construction at 13.) That claim construction is the basis of Krone's motion for summary judgment because it is uncontested that all

6

of the Krone mowers at issue use rotary-type cutters and none use "a sickle bar cutter which cuts in a scissors-like action."

At this point it is necessary to clear up a discrepancy. Claim 1 of the patent uses the phrase "reciprocating cutter bar" while Claim 2 uses the phrase "reciprocating cutter blade." (Patent at col. 8, ls. 35-36; col. 9, ls. 6-7.) However, in its Claim Construction this court construed only the term "reciprocating cutter bar" when it might have been more useful if both terms were construed. Nevertheless, the arguments the parties made in their briefs on claim construction regarding the term "reciprocating cutter bar" are equally applicable to the term "reciprocating cutter blade." The court will not revisit those arguments at this time, but for all of the same reasons discussed in its Claim Construction, this court finds that the term "reciprocating cutter blade" refers to "a sickle bar cutter which cuts in a scissors-like action." The term "reciprocating cutter blade" cannot be construed to include a rotary-type cutter any more than can the term "reciprocating cutter bar."

That being said, it is clear that Krone's mowers do not literally infringe Roden's patent. This is so because Claims 1 through 7 all claim a mower apparatus with a "reciprocating cutter bar" or "reciprocating cutter blade." According to this court's Claim Construction, that means "a sickle bar cutter which cuts in a scissors-like action," a feature which, undisputedly, none of Krone's mowers have. None of the claims in Roden's patent, therefore, "reads on the accused device exactly." Indeed, in his response to Krone's motion for summary judgment, Roden does not argue literal infringement, but concentrates his argument on the proposition that Krone's mowers infringe his patent under the doctrine of equivalents. The court therefore finds that there is no issue of material fact regarding literal infringement and Krone is entitled to judgment as a matter of law on that issue.

7

Krone next argues that it is also entitled to summary judgment on the issue of infringement under the doctrine of equivalents based both on prosecution history estoppel and the disclosure-dedication rule.

**Prosecution History Estoppel**

Krone claims that during the prosecution of his patent, Roden limited his claims to sickle bar cutters (reciprocating cutters), and in exchange for that limitation, the Patent Office granted the patent. (Def.'s Br. at 6.) Therefore, Krone argues, the doctrine of equivalents cannot be invoked to extend Roden's patent to mowers which use rotary cutters. In support of its argument, Krone cites a single statement made by Roden during the prosecution of his patent, "Applicant traverses Examiner's statement if he is saying rotary cutters, reel cutters, and cutter-bar cutters are equivalent." (Def.'s Br. at 7.)

In the court's opinion, this single statement by Roden is not enough to establish that Roden "surrendered or disclaimed" rotary cutters " in order to obtain the patent." *Loral Fairchild*, 181 F.3d at 1322. Krone has not established, for example, that Roden attempted to include rotary cutters in his patent claims, that his claims were rejected by the Patent Office, and Roden then narrowed his claims by excluding rotary cutters in order to overcome the Patent Office's objections. In fact, the record before the court concerning the patent prosecution is fragmented. The parties have presented pieces of the prosecution history; for example, a rejection letter from the Patent Office and what appears to be Roden's response to that letter (Defendant's Ex. 7 and 8). But from what has been presented, it is impossible for the court to decipher what happened during the process. This is so in part because the exact language of the rejected claims has not been presented to the court (at least the court has not discovered this information, and if it has been presented, Krone has not pointed it

8

out). It is therefore impossible for the court to conclude that Roden amended his claims, limiting them to only reciprocating cutters, in order to overcome obstacles to patentability.

The court is aware that in some instances the burden is on the holder of the patent to establish that an amendment was not made for the purpose of overcoming patentability objections. *Warner-Jenkinson*, 520 U.S. at 33. However, that burden arises only after it is established that an amendment was made. Here, Krone (the movant) has not presented enough evidence to establish that Roden amended his claims to exclude rotary cutters.

In sum, the court cannot conclude that Roden limited his claims to reciprocating cutters in order to secure his patent. Therefore, the doctrine of prosecution history estoppel does not prevent Roden from arguing that Krone's mowers infringe his patent under the doctrine of equivalents.

**The Disclosure-Dedication Rule**

Krone also argues that Roden is foreclosed from arguing infringement under the doctrine of equivalents because his patent discloses rotary cutters, but then only claims mowers using reciprocating cutters. (Def.'s Br. at 7.) Indeed, Roden's patent specification states, "[a]lthough some agricultural mowers use rotary cutting blades, the present invention uses a sickle bar cutter . . . ." (Patent at col. 1, ls. 32-33.) As discussed above, each of the Patent's claims claim "a cutter assembly including . . . reciprocating cutter bar means" or "reciprocating cutter blade means," which the court has construed to mean "a sickle bar cutter which cuts in a scissors-like action."

Roden responds to Krone's argument by contending that he did not intentionally limit his patent to mowers with sickle bar cutters. Furthermore, Roden argues that the main object of his invention was to provide a mounting arrangement for an agricultural mower cutter bar assembly, and that such an arrangement is not limited to use with a sickle bar cutter. (Pl.'s Resp. at 3.)

9

In order to place his patent in context, in his response Roden explains some history of hay mower technology. According to Roden, agricultural mowers using rotary blades were introduced as early as 1953, and by the 1970's agricultural rotary hay mowers were in use. Roden maintains that those early mowers gained little acceptance because of various drawbacks when compared to the "tried and true" sickle bar cutter. (Pl.'s Resp. at 3-4.) The early rotary mowers were replaced by rotary disc cutter bar mowers in the early 1980's, and at that point sales improved somewhat. Improvements to the disc cutter bar mowers continued throughout the 1990's. (Pl.'s Resp. at 4.)

Roden contends that when he applied for his patent in 1986 he used the sickle bar cutter because the rotary mowers of the day had several important drawbacks. However, Roden argues, when he applied for and was granted two additional patents, both of which incorporated the cutter bar mounting arrangement from the patent at issue here, the rotary cutters available were greatly improved. In both of the later patents Roden included rotary cutters in his claims. (Pl.'s Resp. at 4-5.) It is Roden's contention that all of this reinforces the idea that the objective of his invention was the design of the cutter bar mounting arrangement, and not the cutter bar itself. (Pl.'s Resp. at 5.)

In *Johnson & Johnston*, the Federal Circuit Court of Appeals considered a patent relating to the manufacture of printed circuit boards. Manufacturing the circuit boards required the stacking of extremely thin sheets of copper foil. The patented invention claimed an assembly whereby the sheets of copper foil were adhered to a stiffer substrate sheet of aluminum. Once adhered, workers could handle the assembly without damaging the copper foil. Other necessary manufacturing steps were then taken with the less fragile assembly, and once they were completed, the aluminum substrate was removed. *Johnson & Johnston*, 285 F.3d at 1048-49. The specification in that patent stated that "[w]hile aluminum is currently the preferred material for the substrate, other metals, such as stainless

AO 72A
(Rev.8/82)

steel or nickel alloys, may be used." *Id.* at 1050. The claims in the patent, however, referred only to "a sheet of aluminum which constitutes a discardable element." *Id.* The court held that "[h]aving disclosed without claiming the steel substrates, Johnston cannot now invoke the doctrine of equivalents to extend the aluminum limitation to encompass steel." *Id.* at 1055.

Although the inventions at issue in *Johnson & Johnston* and the case at hand are very different, from a legal standpoint, the facts are similar. In both instances the patent mentions alternative subject matter which does not appear anywhere in the claims. In *Johnson & Johnston* that subject matter was the possibility of using steel as the substrate, while Roden's patent acknowledges the possibility of agricultural mowers using rotary cutting blades.

One difference between the case at hand and *Johnson & Johnston* is that in *Johnson & Johnston* the patent specifically disclosed that steel was a viable substitute for aluminum, while here Roden's patent refers to rotary cutters, but does not specifically state that rotary cutters could be substituted for reciprocating cutters in the invention. Nevertheless, the disclosure of rotary cutters in Roden's patent is sufficient to trigger the disclosure-dedication rule. The patent explains that "[a]lthough some agricultural mowers use rotary cutting blades, the present invention uses a sickle bar cutter because I find it more desirable in recovering more of the nutritious elements of the crop, particularly when the crop is matted or 'lodged' as it is sometimes called." (Patent at col. 1, ls. 32-36.) This statement connotes that Roden recognized that his invention could have been formulated with a rotary cutter, but he chose to use a reciprocating cutter instead.

According to Roden, when he applied for his patent in 1986, and when it was issued in 1988, rotary cutters had been in existence for some time. Moreover, Roden asserts that rotary disc cutter bar mowers were in existence since the early 1980's. That being the case, the court finds that one

11

of ordinary skill in the art would have understood from the descriptions in Roden's patent that it was possible to incorporate the other aspects of Roden's invention into a device with a rotary cutter. In other words, the disclosure was specific enough that one of ordinary skill in the art could identify that rotary cutters had been disclosed and not claimed. Therefore, by not claiming a device with rotary cutters, Roden dedicated it to the public.

As to Roden's argument that the design of the cutter bar mounting arrangement, and not the type of cutter, was the objective of his patent, the same could be said of the patent in *Johnson & Johnston*. In that case, the objective of the patent was to allow easier handling of the fragile copper foils. Using aluminum as opposed to steel was not essential to that objective. Nevertheless, because the patent disclosed steel but claimed only aluminum, the court found that the patent holder could not use the doctrine of equivalents to extend the aluminum limitation to include steel. Likewise, whether or not the objective of Roden's patent can be applied to mowers using either reciprocating or rotary cutters, because the patent disclosed rotary cutters but claimed only reciprocating cutters, Roden cannot now use the doctrine of equivalents to extend the reciprocating cutter limitation to include rotary cutters.

Finally, Roden's argument that he did not intend to limit his patent to only reciprocating cutters is without merit. "We hold, as a matter of law, that intent is not part of the *Johnson & Johnston* disclosure-dedication analysis. The language of *Johnson & Johnston* is clear: 'The patentee's subjective intent is irrelevant to determining whether unclaimed subject matter has been disclosed and therefore dedicated to the public.'" *Toro*, 383 F.3d at 1333 (quoting *Johnson & Johnston*, 285 F.3d at 1053 n. 1).

12

For all of the foregoing reasons, the court finds, as a matter of law, that Roden's patent disclosed but did not claim rotary cutters. Devices or combinations using rotary cutters were therefore dedicated to the public, and Roden is precluded from arguing that his patent extends to mowers using rotary cutters under the doctrine of equivalents. Because it is undisputed that all of the Krone mowers at issue use rotary cutters and do not use reciprocating cutters, the court finds that no material issues of fact exist, and Krone is entitled to judgment as a matter of law on the issue of infringement under the doctrine of equivalents.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 6th day of July 2005, at Milwaukee, Wisconsin.

WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

13